UNITED STATES of America

v.

Jose MARTINEZ–TORRES, et al., Defendants.

No. SSS 82 CR. 489 (CBM).

United States District Court, S.D. New York.

Jan. 11, 1983.

supply probable cause for the search warrant for 774 East 236th Street.

John S. Martin, Jr., U.S. Atty. by James R. DeVita, Marc J. Gottridge, Asst. U.S. Attys., New York City, for U.S.

Goldberger, Feldman, Dubin & Weisenfeld, P.C. by Paul A. Goldberger and J. Jeffrey Weisenfeld, New York City, for defendants Martinez-Torres and Alamo.

Irving Cohen, New York City, for defendant Molina-Santiago.

Perlmutter & Muraskin by Hermena Perlmutter, New York City, for defendant Calvente.

Philip Edelbaum, New York City, for defendant Soto.

Michael P. Stokamer, New York City, for defendant Santiago-Colon.

## OPINION

MOTLEY, Chief Judge.

This opinion responds to challenges raised to jury instructions. The trial involved multiple defendants charged with multiple narcotics and firearms violations. Since this court refused to amend its instructions as requested, this opinion now sets forth the reasons underlying the court's refusal, par-

1. 21 U.S.C. § 848 (1970) provides in pertinent part:

 (a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,-000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).

 (2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—
 (A) the profits obtained by him in such enterprise, and
 (B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

 (b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.

2. 21 U.S.C. § 846 (1970) provides in pertinent part:

ticularly as to the exceptions raised by defendant Martinez-Torres (Torres).

Torres raised several exceptions to the court's instructions. These exceptions may be summarized as follows: 1) Torres asked the court to instruct that a conspiracy to violate the narcotics laws, 21 U.S.C. § 846,[1] is a lesser included offense of a continuing criminal enterprise in violation of the narcotics laws, 21 U.S.C. § 848(b);[2] 2) Torres also requested the court to charge that a § 846 conspiracy is a necessary predicate of a § 848 continuing criminal enterprise; and 3) Torres further claimed that the three predicate offenses of a § 848 violation must be specifically charged in the indictment.[3]

 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

3. Several other exceptions were raised after the court charged the jury which are essentially frivolous or precluded by prior Second Circuit rulings.

 Counsel for defendants objected to that portion of the court's charge with respect to the use of investigative techniques by the drug enforcement agents, which stated that investigative techniques are not the concern of the jury. (*See* Trial Transcript (Tr.) at 3447.) Counsel argued that this instruction was confusing. The court notes that right before this contested statement, it stated, "There is no requirement that the government must investigate or prove its case through any particular means" (Tr. at 3447). Thus, there was no possibility of confusion.

 The request of counsel for defendant Alamo with respect to the accomplice charge was frivolous since it was specifically requested by counsel for defendant Soto in accordance with the defense theory that the government informant, Luigi Vizzini, was a double dealer (Tr. at 3462).

 Defense counsel Weisenfeld's objection to language in the conspiracy charge that conspirators present a greater threat than one acting alone was frivolous since that language admittedly has been used repeatedly by judges of this court (Tr. at 3464). The same can be said with respect to the objection by Mr. Weisenfeld as to the charge on the use of government informants (Tr. at 3464).

 Defense counsel Cohen's objection that intent of a defendant could not be gleaned in this case

■ Initially, the court notes that Torres' counsel submitted no proposed jury instructions but raised oral exceptions to the court's instructions for the first time after the court's charge to the jury. When trial counsel makes no request for a jury instruction but raises objections after the court's charge, the standard governing review of the trial court's refusal to amend its instructions is whether there was "plain error affecting substantial rights." Fed.R. Crim.P. 52(b); *United States v. Tsanas,* 572 F.2d 340, 347 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *see*

from the age, background, and experience of a defendant because no such evidence was offered and would lead the jury to infer that defendants had a duty to offer evidence on these matters was likewise frivolous. All defendants were before the jury. The jury could see whether a particular defendant was young or old. Moreover, testimony was given by defendant Alamo's wife regarding Alamo's background, work experience, family and children. The informant Vizzini gave the jury much insight into the background and experience of Torres by describing Torres' relationship with coconspirator Jamie Villa (Tr. at 3465).

Mr. Cohen's objection to the court's charge on inferences to be drawn from circumstantial evidence is plainly contrary to the Second Circuit's rulings on the subject (Tr. at 3465). Counsel for defendant Calvente requested an instruction stating that if the jury found Calvente innocent on the narcotics conspiracy, it should not go on to consider the firearms conspiracy. This request was denied since the firearms conspiracy count alleged that that particular conspiracy had as its object not only a violation of the narcotics laws but a violation of the registration and serial number identification requirements of the firearms statutes (Tr. at 3469–3470).

Mr. Weisenfeld's objection that there would be no basis for finding constructive possession of narcotics on the part of defendant Alamo if he were acquitted on the conspiracy count had no merit in view of this court's charge on the meaning of constructive possession (Tr. at 3471).

Finally, counsel for defendant Nelson Soto took exception to this court's jury instruction with respect to the narcotics conspiracy. Essentially, counsel claimed that the court's conspiracy charge is not as broad as the law permits in describing innocent and noncriminal participation in a conspiracy.

Quoting from *United States v. Purin,* 486 F.2d 1363, 1369 (2d Cir.), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974) and *cert. denied sub nom. Da Silva v. United States,* 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974), he urged that the law of this Circuit permits the instruction that a "mere willing participation in acts with alleged co-conspirators, knowing in a general way that their intent was to break the law, is insufficient to establish a conspiracy" (Tr. at 3470). An examination of *Purin, supra,* however, demonstrates that this argument is without merit.

In *Purin,* the appellant argued that the evidence was insufficient to establish that he was a conspirator with his co-defendants. In rejecting this claim, the Second Circuit stated:

[W]e are persuaded that there was adequate evidence to establish his participation in the conspiracy. We have no quarrel with the general proposition advanced by appellant that a mere willing participation in acts with alleged co-conspirators, knowing in a general way that their intent was to break the law, is insufficient to establish conspiracy.... However, the facts here clearly establish that Da Silva was a knowing and willing participant in the sale of cocaine. When Bergin and Perigo first approached Da Silva, he was advised not that they were users but rather that they had started a "cocaine business" and were "looking for a connection."

486 F.2d at 1369. Concluding that the evidence was sufficient to establish his participation in the conspiracy, the court concluded that the trial court's conspiracy charge was proper and affirmed the conviction. This court notes that the actual jury charge given by the trial court is similar in substance to that given in this case. *See United States v. Purin,* 486 F.2d at 1369 n. 3 (quoting trial court's jury instruction); *see also United States v. Guillette,* 547 F.2d 743, 750 n. 5 (2d Cir.) (quoting with approval a conspiracy instruction similar in substance to the instruction given in this case), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).

The present case fits the *Purin* pattern of the relationship between the evidence and the instruction. Here, the instruction at least according to the language cited in *Purin,* does not go as far as the law permits in describing the extent of innocent participation. Any possibility of error, however, is cured by the convincing evidence of knowing and willful participation in the conspiracy. Here, defendant Soto was an active participant in a heroin mill, sitting around the table where heroin was regularly mixed with dilutents and helping to package drugs in a narcotics lair full of drugs, dilutents, and dangerous weapons. Such evidence, even more so than the evidence in *Purin,* establishes the knowing and willful participation of the defendant. The argument that under these circumstances that there is a serious issue of knowledge and willfulness is plainly without merit.

*also United States v. Salas,* 387 F.2d 121, 122 (2d Cir.), *cert. denied,* 393 U.S. 863, 89 S.Ct. 145, 21 L.Ed.2d 131 (1967) (denial of request for instruction was not an abuse of discretion where the request was not made until after the charge to the jury had been completed). Moreover, Torres' objections (*i.e.* objections 1) and 2) above), other than the due process exceptions, did not specifically set forth the grounds of objection. Since Torres' objections were unclear, there is a serious question whether these objections are preserved for appeal. Fed.R. Crim.P. 30; *United States v. Dixon,* 536 F.2d 1388, 1397 (2d Cir.1976); *see also United States v. Jackson,* 569 F.2d 1003 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978) (counsel has affirmative obligation to make the district court aware of any of its errors in its decision to reject a requested jury instruction and counsel cannot rely on court's own examination amidst the diverse pressures during closing stages of trial). Nevertheless, since Torres' exceptions raise important and unsettled issues with respect to the federal statutes involved, this court believes that each exception raised merits careful consideration.

The indictment in this case charged thirteen defendants with twelve counts including substantive narcotics and firearms violations, a narcotics conspiracy, and a firearms conspiracy. Torres was the only defendant charged in all twelve counts and he alone was charged with engaging in a continuing criminal enterprise. After a three week trial, the jury found Torres and each defendant guilty of each count with which he or she was charged.

### I.

As noted above, after the court's charge to the jury, counsel for Torres raised exceptions to the charge. Counsel stated:

In order for the jury to convict Martinez-Torres of Count Two [the continuing criminal enterprise count], they would necessarily have to find him guilty of Count One [the narcotics conspiracy] as a predicate. You can't be guilty of being a supervisor and organizer of five or more people unless you are guilty of the conspiracy.... If they find him not guilty of the conspiracy, Judge, there is no need for them to consider Count Two; he would automatically be acquitted on Count Two.

(Trial Transcript at 3458). While counsel did not explicitly so state, this court interprets these objections as a request under Rule 31(c) of the Federal Rules of Criminal Procedure for a lesser included offense instruction. Essentially, counsel was claiming that a defendant cannot commit the crime of engaging in a continuing criminal enterprise without also necessarily committing the crime of conspiracy. That is, the elements of the crime of managing a continuing criminal enterprise completely encompass all the elements of conspiracy so that in violating § 848, the criminal necessarily also violates § 846. Counsel's conception of the relationship between §§ 848 and 846 follows the definition of a lesser included offense. As the Second Circuit has stated:

"[W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense; and if, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense is necessarily included in the other."

*United States v. Sperling,* 560 F.2d 1050 (2d Cir.1977) *quoting* 22 C.J.S. § 823 (1961) (footnotes omitted); *see also Brown v. Ohio,* 432 U.S. 161, 166–67, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977).

It is elementary that unless a § 846 conspiracy is a lesser included offense of a § 848 continuing criminal enterprise, this court's refusal to instruct was not plain error. *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *see also United States v. Tsanas,* 572 F.2d 340 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *United States v. Busic,* 592 F.2d 13 (2d Cir.1978).

This court emphasizes that it will not attempt to decide whether a § 846 con-

spiracy is a lesser included offense of a § 848 continuing criminal enterprise. Instead the discussion below will simply demonstrate that neither the Supreme Court nor the Second Circuit has settled the issue of whether a § 846 conspiracy is a lesser included offense of a § 848 continuing criminal enterprise. Therefore, this court's refusal to further instruct on the lesser included offense was proper because of a combination of two reasons: 1) since Torres raised the issue of lesser included offense only after the court's charge to the jury, the court's refusal to so charge is governed by the standard of plain error on appeal; and 2) since the law is now unsettled on the lesser included offense issue, the court's refusal to so instruct was not plain error.

### A. The Analytical Confusion of United States v. Sperling

Since *United States v. Sperling*, 560 F.2d 1050 (2d Cir.1977) has generated much of the analytical confusion concerning the relationship between §§ 846 and 848, the court turns first to a detailed analysis of *Sperling*. The facts of this huge case were set out in *United States v. Sperling*, 506 F.2d 1323 (2d Cir.) (*Sperling* I), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1974), and this court need not restate them in detail here. Sperling and seventeen others were indicted on May 11, 1973 on various counts charging violations of the narcotics laws. After a four week jury trial before Judge Pollack, Sperling was convicted on all counts including a count charging conspiracy to violate the narcotics laws, 21 U.S.C. § 846, and a separate count charging him with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1970). On September 12, 1973, Judge Pollack sentenced Sperling to life imprisonment and a $100,000 fine on the § 848 count and to a concurrent term of thirty years imprisonment as well as a fine of $50,000 on the § 846 count. On Appeal, the Second Circuit affirmed the convictions on these two counts, reversed Sperling's conviction on three substantive narcotics counts and remanded for, *inter alia,* a reconsideration of the concurrent sentence imposed on the

narcotics conspiracy count. 506 F.2d at 1335 n. 14.

On remand for reconsideration of the narcotics conspiracy sentence, Judge Pollack adhered to the original sentence that Sperling be imprisoned for thirty years on the conspiracy count to run concurrently with the life sentence originally imposed on the continuing criminal enterprise count. Judge Pollack also reinstated the original cumulative fines of $30,000 on the § 846 count and $100,000 on the continuing criminal enterprise count. *United States v. Sperling,* 413 F.Supp. 845, 847 (S.D.N.Y. 1976). On Appeal, Sperling argued that because conspiracy was a lesser included offense of the continuing criminal enterprise count, the sentencing on both counts, rather than one or the other, violated his Fifth Amendment guaranty against double jeopardy. Agreeing with Sperling, the Second Circuit vacated Sperling's prison sentence and the fine on the conspiracy count but allowed the conviction on the conspiracy count to stand. *United States v. Sperling,* 560 F.2d at 1060.

### B. The Lesser Included Offense Holding

■ In *Sperling* II, the Second Circuit accepted Sperling's contention that the proper resolution of the cumulative punishment issue required the double jeopardy analysis under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. *See also Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). It is important to note

*Sperling* II clearly conceived the issue before it to be a *Blockburger* double jeopardy problem:

> [T]he double jeopardy clause would not be violated here unless all the elements of the § 846 conspiracy offense must be proved in order to convict of the § 848 continuing criminal enterprise offense.... Put another way, under traditional analysis if a § 846 conspiracy is a "lesser included offense" of a § 848 continuing criminal the enterprise [sic], then punishment imposed on the greater offense (§ 848) would preclude punishment on the lesser (§ 846).

560 F.2d at 1055. Under its double jeopardy analysis, the Second Circuit held:

> [O]n the facts here involved, § 846 defines a lesser included offense within § 848. One of the elements required to convict a § 848 offense is that the defendant shall have violated the narcotics laws "in concert with five or more other persons." "Concerted" means "mutually contrived or agreed on," or "performed in unison." *Webster's New Collegiate Dictionary,* 233 (1976 ed.). We think it is too plain for cavil that to act "in concert" to violate the law necessarily includes conspiracy to do so, and, hence, *to prove the continuing criminal enterprise charge is to prove the conspiracy....* In the present setting, then, these two offenses are "the same in law and in fact."

560 F.2d at 1055 (citations and footnotes omitted) (emphasis added).[4] In conclusion the Second Circuit stated:

> [W]e vacate appellant Sperling's sentence on Count One, the conspiracy count, but we vacate only the sentence, for his conviction on Count One remains unaffected.... [I]n the unlikely event that sometime in the future his conviction on Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated.

*Id.* at 1060 (footnotes omitted).

This court believes that the reasoning of *Sperling* II is confusing on the double jeopardy issue. On the one hand, the Second Circuit held that because a § 846 conspiracy and a § 848 continuing criminal enterprise were the "same offense in law and in fact" under the *Blockburger* test, 560 F.2d at 1055 *quoting United States v. Pacelli,* 470 F.2d 67 (2d Cir.), *cert. denied,* 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1972), the imposition of cumulative punishment for both offenses was constitutionally impermissible. The Second Circuit thus vacated the sentence and fine imposed for the conspiracy but sustained the conspiracy conviction. In upholding the conviction, the Second Circuit thus implied that a single transaction under double jeopardy principles may be the basis of more than one conviction. This position is plainly contrary to traditional double jeopardy principles. *See United States v. Alexandro,* 675 F.2d 34 (2d Cir.1982); *United States v. Mallah,* 503 F.2d 971 (2d Cir.), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1974); *United States v. Edwards,* 366 F.2d 853, *cert. denied sub nom. Jakob v. United States,* 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 and *cert. denied sub nom. Parness v. United States,* 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1966).

In *United States v. Alexandro, supra,* the defendant Alexandro, a criminal investigator with the Immigration and Naturalization Service, constructed an intricate scheme to obtain a permanent resident card for an alien at the request of certain undercover agents. As a result of this ploy, Alexandro was convicted by a jury of receiving bribes pursuant to subsection (c) of 18 U.S.C. § 201 (1976), conspiracy to receive bribes pursuant to 18 U.S.C. § 371 (1976), and conflict of interest pursuant to 18

---

**4.** When the Second Circuit refers to the "facts here involved," 560 F.2d at 1055, it is simply noting that only a *single* transaction is involved. If there were, for example, two separate criminal transactions at two separate times, then there would be no double jeopardy violation even if one offense is in theory necessarily included in the other. In *Sperling* II, however, the Second Circuit noted that "[n]o contention is made here that the offenses charged rest upon different series of transactions." 560 F.2d at 1054.

U.S.C. § 203 (1976). On appeal, Alexandro argued, *inter alia,* that his conviction of conflict of interest under 18 U.S.C. § 203 should be vacated as a lesser included offense of his conviction of receiving bribes pursuant to 18 U.S.C. § 201(c). In rejecting Alexandro's claims, the Second Circuit applied the *Blockburger* test and determined that § 203 was not a lesser included offense of § 201(c). The Second Circuit stated that "Section 203(a) is clearly not a lesser-included offense of § 201(c)..." because "each provision requires proof of a fact which the other does not within the meaning of *Blockburger.*" 675 F.2d at 43. The court thus concluded that "Alexandro's conviction on the conflict of interest ground need not be vacated," *id.* at 43. It follows from this conclusion that if § 203 were a lesser included offense of § 201(c), then the court would have been compelled to vacate the conviction on the lesser included offense because of Alexandro's conviction of the greater offense.

Other circuits have indicated that double jeopardy principles forbid multiple convictions for a single offense. In *United States v. Benn,* 476 F.2d 1127 (D.C.Cir.1973), Judge Bazelon examined the relationship between the elements of 1) assault with a dangerous weapon and 2) assault with intent to commit rape while armed. Applying the *Blockburger* test, Judge Bazelon held that of the two crimes charged, assault with a dangerous weapon was a lesser included offense. Judge Bazelon then concluded:

> The assault with a dangerous weapon count therefore merges with and becomes a lesser included offense to the charge of assault with intent to commit rape while armed, *barring the conviction on the lesser offense.* Accordingly, the convictions rendered under 22 D.C. Code § 502 [assault with a dangerous weapon] are vacated....

476 F.2d at 1132 (emphasis added). According to Judge Bazelon, double jeopardy principles preclude a conviction on both the greater and lesser offense at the same trial, and therefore compel the vacatur of the conviction on the lesser offense. In *United States v. Benn,* Judge Bazelon focused on the narrow issue of multiple convictions for the same offense and did not examine the issue of cumulative punishment. Thus, Judge Bazelon indicates that, entirely separate from the issue of multiple punishment, double jeopardy forbids multiple convictions for the same offense.

In *United States v. Buckley,* 586 F.2d 498 (5th Cir.), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979), defendant had been convicted of 1) attempted income tax evasion in violation of 26 U.S.C. § 7201 (1954) and 2) failure to file a return under 26 U.S.C. § 7203 (1954). On appeal, the Fifth Circuit held that the § 7201 violation was a lesser included offense of the § 7203 crime. In its opinion, the court clearly distinguished between the issue of punishment and conviction:

> Although the government concedes that punishment may not be imposed under both statutes, it nonetheless argues that the *convictions* for failure to file should stand for the years 1970, 1973, and 1974, reasoning that a conviction without a sentence imposed thereupon is harmless. We disagree. Where one offense is included in another, it cannot support a separate conviction and sentence.... Thus, in situations such as the present one, where the defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction *and* sentence on the lesser included offense, leaving the conviction and sentence on the greater offense intact.

586 F.2d at 504–05 (emphasis in original). *Accord: United States v. Sampol,* 636 F.2d 621, 652 (D.C.Cir.1982) (emphasis added) ("[T]he prohibition in the Constitution against placing an accused twice in jeopardy 'for the *same offense*' is directed at the actual '*offense*' with which he is charged and not only at the violated statutes. The Constitution does not permit convictions for the 'same offense' if they are charged under different statutes..."; *United States v. Jackson,* 509 F.2d 499, 501 n. 3 (D.C.Cir. 1973) (citing *United States v. Benn*); *United States v. Greene,* 489 F.2d 1145 (D.C. Cir.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239,

42 L.Ed.2d 190 (1973) and *reh'g denied,* 419 U.S. 1041, 95 S.Ct. 530, 42 L.Ed.2d 318 (1974); *United States v. Decoster,* 487 F.2d 1197, 1199 (D.C.Cir.1973); *United States v. Toy,* 482 F.2d 741 (D.C.Cir.1973); *accord: Government of Virgin Islands v. Greenidge,* 600 F.2d 437 (3rd Cir.1979) (citing *United States v. Benn*); *accord: United States v. Belt,* 516 F.2d 873, 875 (8th Cir.) ("When, as here, a defendant is convicted of both a greater and a lesser included offense, the conviction and sentence on the lesser must be vacated"), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976); *United States v. Howard,* 507 F.2d 559, 563 (8th Cir.1974) ("A defendant may not be charged and convicted of both a major offense and a lesser included offense arising out of the same facts," *citing United States v. Benn*).

The Fifth Circuit has squarely held that a § 846 conspiracy is a lesser included offense of a § 848 continuing criminal enterprise. In *United States v. Michel,* 588 F.2d 986 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979), the Fifth Circuit held that because "conspiracy to import [marijuana] is a lesser-included offense of a § 848 continuing criminal enterprise, it cannot support a separate conviction and sentence," *id.* at 1001 (emphasis added). *See also United States v. Johnson,* 575 F.2d 1347, 1354 (5th Cir.) ("Since conspiracy to import marijuana is a lesser included offense to engaging in a continual criminal enterprise, Johnson's conviction for conspiracy *must* be vacated") (emphasis added), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). It is important to note that the Fifth Circuit believed that double jeopardy principles, as opposed to common law or statutory principles of merger, required the merger of the § 846 and the § 848 offenses for sentencing and conviction purposes. *Cf. Grimes v. United States,* 607 F.2d 6, 12 (2d Cir.1979) (convictions for the lesser offense, 18 U.S.C. § 2113(a) [bank robbery] are deemed merged into the greater offense, 18 U.S.C. § 2113(d) [armed bank robbery] and separate convictions for § 2113 are vacated, but "[a]lthough the double jeopardy problems raised by Grimes are 'significant' ones... we need not rest

our decision today on constitutional grounds. Instead, we base our decision on interpretation of the statute's language and its legislative history..."); *see also United States v. Stroman,* 667 F.2d 416 (2d Cir. 1981); *United States v. Evans,* 665 F.2d 54 (2d Cir.1981); *United States v. Smith,* 621 F.2d 483, 489 (2d Cir.), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981); *but see United States v. Belt,* 516 F.2d 873, 875 n. 7 (8th Cir.1975) (common law doctrine of merger no longer exists; term is now commonly used to refer to the constitutional prohibition arising out of the double jeopardy clause), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976). It is also important to note that having found that the § 846 offense is necessarily included in the § 848 crime, the Fifth Circuit believed that double jeopardy principles prohibited a sentence and conviction on the lesser included offense.

Both the Fifth Circuit, *see e.g., United States v. Michel, supra,* 588 F.2d at 1001, and the Second Circuit, *see e.g., United States v. Barnes,* 604 F.2d 121, 154 (2d Cir.), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980), have cited *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) for the view that a § 846 conspiracy is a lesser included offense of a § 848 continuing criminal enterprise under double jeopardy principles. A closer examination of *Jeffers,* however reveals that the Supreme Court did not squarely decide the lesser included offense issue. In that case, defendant Jeffers and others were charged in a first indictment with a § 846 conspiracy. Subsequently, the grand jury returned a second indictment against Jeffers alone charging him with a § 848 continuing criminal enterprise. The Government filed a motion for trial of the two counts together under Rule 8, Federal Rules of Criminal Procedure. After strenuous objections by Jeffers to the proposed joinder, the court denied the Government's motion. After a trial on the § 846 count, a jury found Jeffers guilty as charged. He received the maximum punishment under the statute. Subsequently, Jeffers was

tried a second time for the § 848 count. At the second trial, a jury found Jeffers guilty of engaging in a continuing criminal enterprise. On appeal to the Supreme Court, Jeffers argued that because § 846 was a lesser included offense of § 848, the subsequent trial and conviction for the § 848 offense placed him twice in jeopardy in violation of the Fifth Amendment. Assuming arguendo that § 846 was a lesser included offense, the Supreme Court nonetheless held that Jeffers had waived his double jeopardy rights by persuading the trial court to order separate trials and by failing to raise any double jeopardy claims at that time. Having concluded that Jeffers waived any rights he might have had, the Court then turned to the question of cumulative punishment. The Court concluded that Congress did not intend to inflict cumulative punishment on those defendants whose conduct violated both statutes. The Supreme Court thus vacated the sentence and fine imposed for the § 846 conspiracy but allowed both convictions to stand.

As the discussion above indicates, the Supreme Court without deciding the issue, reasoned that even assuming that § 846 was necessarily included in § 848, Jeffers had waived his double jeopardy rights. Since the decision on the cumulative punishment issue was based upon congressional intent and not upon an application of the *Blockburger* test, the Supreme Court never actually reached, much less decided, the lesser included offense issue.

■ This review of double jeopardy principles as enunciated by the case law now allows this court to state precisely the confusion in the *Sperling* II analysis. When the Second Circuit decided that there was only one offense under the *Blockburger* test, it was required by the double jeopardy doctrine to vacate the sentence for the lesser included offense, the § 846 conspiracy. However, the protection afforded by the double jeopardy clause is broader than simply a ban against multiple punishment. The double jeopardy clause also requires that the conviction for the lesser included offense be vacated. In vacating the § 846 sentence but not the conviction under its double jeopardy analysis, the *Sperling* II court was acting inconsistently with the logic of its opinion.[5] That confusion contin-

---

**5.** In a footnote the *Sperling* II court explained why the § 846 conviction was being upheld:

> Appellant does not contest the propriety, and does not claim error in the fact that he was indicted, tried, and convicted on both the conspiracy count, § 846, and the continuing criminal enterprise count, § 848. His single contention upon this appeal, a contention with which we agree, is that, having been convicted for committing both crimes, he could not be punished on both convictions but only on one.

560 F.2d at 1060 n. 13. Even though the appellant framed his contentions to emphasize the multiple punishment issue, his argument that a § 846 conspiracy was a lesser included offense of a § 848 continuing criminal enterprise under *Blockburger* also implicitly contested the propriety of multiple convictions. Once a court finds that a crime is a lesser included offense within the meaning of *Blockburger,* the defendant is then logically entitled to the full panoply of double jeopardy protections including the ban against multiple convictions. As Judge Bazelon has stated, once a lesser included offense merges with the major offense, there is a bar against a conviction on the lesser offense. *United States v. Benn,* 476 F.2d 1127, 1132 (D.C.Cir.1973); *see also United States v. Belt,*

516 F.2d 873, 875 (8th Cir.1975) ("When ... a defendant is convicted of both a greater and a lesser included offense, the conviction and sentence on the lesser *must* be vacated") (emphasis added). Logically, for an appellant to contest *only* the multiple punishment issue *without* implicitly raising other double jeopardy issues as well, he would have to argue that Congress did not intend multiple punishment. That argument, as opposed to the *Blockburger* argument, isolates the multiple punishment issue. Appellant Sperling, however, raised the *Blockburger* issue and this argument implicates the full store of double jeopardy rights.

Moreover, even if the appellant raised only the multiple punishment question, *Sperling* II is still inconsistent with traditional double jeopardy doctrine because the Second Circuit also stated that "in the unlikely event that some time in the future his conviction of Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated." 560 F.2d at 1060. There appears to be no authority for the view that should the conviction for the greater offense be vacated that the conviction and sentence for the lesser offense may be reinstated. Indeed, it is axiomatic that a vacatur of a sentence on the greater offense necessarily bars a sentence on the

ues to exist. *See United States v. Sperling,* 692 F.2d 223, 224–25 (2d Cir.1982) (Timbers, J.) (reaffirming the views of *Sperling* II); *see also United States v. Barnes,* 604 F.2d 121, 154–55 (2d Cir.) (defendant Barnes convicted of count one (conspiracy) and count two (continuing criminal enterprise) even though the court stated, "The 'continuing criminal enterprise statute,' 21 U.S.C. § 848, was aimed at organizers of *criminal conspiracies having five or more members. . . . Because conspiracy to distribute is a lesser* included offense, evidence admissible on one count will generally be admissible on the other") (emphasis added), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *see also United States v. Loften,* 518 F.Supp. 839 (1981) (Goettel, J.) (Judgment and Probation Commitment Order entered on September 11, 1981, stating that defendant was convicted of count one [conspiracy] and count two [continuing criminal enterprise] but also stating, "No sentence imposed on count 1 as it is a lesser included offense charged in count 2").

### C. *The Congressional Intent Holding*

After its discussion of the lesser included offense, the Second Circuit, in part III of its opinion, examined the legislative history of 21 U.S.C. § 848:

> It is instructive, we believe, that as originally introduced, the continuing criminal enterprise provision dealt only with sentencing. It was an alternative to be invoked in case of those who engaged in extensive violations of the narcotics laws and who derived substantial profit from their illicit enterprise. . . . As merely a sentencing provision, however, it contemplated the use of hearsay and rumor in the presentencing report without providing an opportunity for cross-examination of the declarant; it would have allowed the sentencing judge to withhold portions of the presentence report from the defendant; and it would have placed on the defendant the burden of proving that any substantial income he enjoyed was not

attributable to his illegal transactions in narcotics.

> Doubts about the constitutionality of these provisions of the continuing criminal enterprise sentencing proposal led to an amendment making a continuing criminal enterprise not merely a sentencing alternative but a distinct offense, thereby assuring that all its elements would have to be established in court before the offender could be subjected to its stiff penalties. . . . Far from indicating, as the Government suggests to us, that Congress intended that this new continuing criminal enterprise offense be punishable along with the conspiracy offense, this portion of the legislative history shows that what originated as a harsh sentencing alternative remained as such in the enacted statute, but with all our constitutional guaranties preserved.

560 F.2d at 1057. The Second Circuit then stated:

> [W]e are of the opinion, set out above, that Congress did not intend §§ 846 and 848 to be offenses separately and simultaneously punishable where the facts on which the violations rest are the same.

560 F.2d at 1059 (footnote omitted). This court believes that this portion of the Second Circuit's opinion provides a better rationale for the *Sperling* II result than does that court's double jeopardy analysis under the *Blockburger* test. As set forth above, if the double jeopardy analysis is accepted as the only rationale for the *Sperling* II result, then the opinion is internally inconsistent because the logic of the court's own reasoning would require that the conviction be vacated. If, however, the Second Circuit's conclusion that cumulative punishment was not intended is viewed as an alternative holding, then that rationale of the opinion adequately supports its conclusions, *i.e.,* that the § 846 punishment be vacated but the conviction sustained. Interpreted in this fashion, *Sperling* II conforms to the subsequent analysis set forth in *Jeffers v. United States,* because *Jeffers*

lesser included offense. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187

(1977); *North Carolina v. Pierce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1979).

also held that Congress did not intend multiple punishments but sustained the § 846 conviction. This court believes that the Second Circuit's congressional intent analysis provides a more illuminating explanation of *Sperling* II.

This interpretation of *Sperling* II is further supported by recent modifications of the *Blockburger* test. The first case to indicate that, in determining a double jeopardy problem, the court is to apply a prior analysis before reaching the *Blockburger* test is *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). In that case, the issue was whether cumulative punishment was permissible for violations 18 U.S.C. § 2113(d) [armed bank robbery] and 18 U.S.C. § 924(c) [use of a firearm to commit a felony]. In deciding the issue, the Supreme Court reasoned that it "need not reach the [*Blockburger*] issue," *id.* at 11, 98 S.Ct. at 912. The Court found that the legislative history, though not by itself conclusive, was sufficient when combined with two other principles of statutory construction to resolve the cumulative punishment issue. First, the Supreme Court applied the principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *id.* at 14, 98 S.Ct. at 914 *quoting United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); and second, the Court applied the principle that precedence should be accorded to the terms of the more specific statute. The Court concluded that multiple punishments should not be permitted.

In two later cases, *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) and *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Supreme Court ruled that only after the use of standard principles of statutory construction proves to be inconclusive, should the court apply the *Blockburger* test. Where the issue is the permissibility of multiple punishment as was the case in *Sperling* II, the first step is to determine "whether Congress intended to punish each statutory violation separately." *Jeffers v. United States,* 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977). This is the first critical inquiry because:

The Double Jeopardy Clause at the very least precludes the federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress .... If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty.

*Whalen v. United States, supra,* 445 U.S. at 689, 100 S.Ct. at 1436. In order to determine congressional intent, the court must examine the legislative history, the statutory language, as well as employ other methods of statutory construction. *Id.* at 690, 100 S.Ct. at 1437. The court is to apply the *Blockburger* test only when these principles of statutory construction fail to adequately disclose congressional intent. *Whalen* makes clear, then, that the court's first concern and the "dispositive question" is whether Congress intended multiple punishment, *id.* at 689, 100 S.Ct. at 1436. In addition, *Whalen*'s discussion of the constitutional interests at stake indicates that this concern with congressional intent is more than simply a procedural or structural refinement of a judicial test; rather, *Whalen*'s requirement that the court first examine congressional intent serves to protect an additional interest, *i.e.* the "constitutional principle of separation of powers." *Id.* at 689, 100 S.Ct. at 1436. *See also Illinois v. Vitale,* 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980).

This modification of the *Blockburger* test is a judicial reaction to the recent proliferation of voluminous, vague, and overlapping statutes in our criminal justice system. *See*

*Ashe v. Swenson,* 397 U.S. 436, 445 n. 10, 90 S.Ct. 1189, 1195 n. 10, 25 L.Ed.2d 469 (1970) ("In more recent times, with the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction"). Not surprisingly, such a pervasive change has rendered inadequate judicial doctrines developed when "under early federal criminal statutes, offense categories were relatively few and distinct," *id.* As Justice Rehnquist has stated, "[T]he *Blockburger* test, although useful in identifying statutes that define greater and lesser included offenses in the traditional sense is less satisfactory, and perhaps even misdirected when applied to statutes defining 'compound' and 'predicate' offenses." *Whalen v. United States, supra,* 445 U.S. at 708, 100 S.Ct. at 1446 (Rehnquist, J., dissenting).

 This review of the Supreme Court's modifications of the *Blockburger* test lends further support to this court's interpretation of *Sperling* II. This court believes that if *Sperling* II were to be decided today, that portion of the opinion discussing congressional intent would be the only holding and rationale of the *Sperling* II result. As *Whalen* has made clear, when dealing with cumulative punishment, the court is to first examine congressional intent and need not reach the *Blockburger* test if congressional intent may be adequately discerned through statutory construction. Thus, under current doctrine, *Sperling* II reached the *Blockburger* issue too soon. The court's legislative analysis is, under current doctrine, analytically prior to the court's application of the *Blockburger* test, and this court believes that *Sperling* II should be so interpreted.[6]

## II.

### Compound and Predicate Offenses

 In part I of this opinion, this court interpreted Torres' exceptions to the court's charge as a request for a lesser included offense instruction. In this part, the court will examine its other interpretations of these exceptions. Counsel for defendant Torres argues that "[i]n order for the jury to convict Torres of Count Two [the continuing criminal enterprise count], they would necessarily have to find him guilty of Count One [the narcotics conspiracy] as a predicate. You can't be guilty of being a supervisor and organizer of five or more people unless you are guilty of the conspiracy." (Trial Transcript at 3458.) In part I, this court interpreted this statement to argue that the crimes defined by §§ 846 and 848 stand in the relationship of greater and lesser offenses because proof of the greater necessarily entails proof of the lesser. These statements may, however, also be interpreted to argue that §§ 846 and 848 stand in the relationship of compound and predicate offenses. The concept of predicate and compound offenses has been explained as follows:

> [T]wo statutes stand in the relationship of compound and predicate offenses when one statute incorporates several other offenses by reference and compounds those offenses if a certain additional element is present. To cite one example, 18 U.S.C. § 924(c)(1) ... states that "[w]hoever ... uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ... shall ... be sentenced to a term of imprisonment for not less than one year nor more than ten years." Clearly, any one of a plethora of felonies could serve as the predicate for a violation of § 924(c)(1).

*Whalen v. United States,* 445 U.S. 684, 711, 100 S.Ct. 1432, 1448, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting). Section 848 states that a person is engaged in a continuing criminal enterprise if "(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this

---

**6.** Under this court's theory that *Sperling* II was based on its analysis of congressional intent rather than on the *Blockburger* test, the court need not reach the issue of whether a single criminal transaction or multiple transactions were involved in this case.

chapter..." Clearly, then, § 848 is a compound offense because it incorporates by reference other offenses and compounds those offenses if certain additional elements are present. Those offenses incorporated by reference, then, are the predicate offenses. Torres' objections may be construed to argue that a § 846 conspiracy is a necessary predicate of a § 848 offense. The court notes that at least two judges of this court appear to have interpreted § 848 in this fashion, although nothing in the statutory language so requires.[7]

The court first notes that the argument that a § 846 conspiracy is a necessary predicate of a § 848 continuing criminal enterprise is in almost all respects identical to the argument that a § 848 conspiracy is a lesser included offense of a § 848 offense. What distinguishes the general concept of compound and predicate offenses from the concept of greater and lesser included offenses is that the compound statute refers to a *number* of predicate offenses. To then modify this relationship by requiring the proof of a certain predicate offense in all instances is to transform that predicate offense into a lesser included offense because proof of the compound offense then necessarily entails proof of the predicate offense. When proof of one offense necessarily entails proof of another, the latter is a lesser

---

7. For instance, in *United States v. Barnes,* 77 Cr. 190 (1977), Judge Werker charged the jury as follows:

> In order to find Barnes guilty [of engaging in a continuing criminal enterprise] you must be convinced beyond a reasonable doubt that the following five essential elements of the crime charged have been proved.
>
> First: That Barnes is guilty of the crime of conspiracy charged in Count One, the elements of which I have already discussed. In other words, you must first have found that Barnes engaged in and participated in the conspiracy to violate the narcotics laws relating to the distribution of heroin or cocaine or possession of heroin or cocaine with intent to distribute it.
>
> Second: That his conduct in engaging and participating in that conspiracy was part of a continuing series of violations by Barnes of the federal narcotics laws...

(Tr. at 9753–54). In *United States v. Loften,* 518 F.Supp. 839 (1981), Judge Goettel charged the jury as follows:

> There are five essential elements that must be established by the government in order to prove the defendant guilty.
>
> First: that Loften engaged in an enterprise to violate the drug laws;
>
> Second: that in the course of participating in that enterprise, Loften committed a continuing series of violations of the drug laws. . . .
> The first element of the charge that the government must prove is that Loften engaged in an enterprise to violate the drug laws. This element is satisfied if you find that Loften is guilty of the crime of conspiracy charged in Count One, the elements of which I have already discussed. In other words, in order to convict, under Count Two, you must first find that Loften knowingly and wilfully engaged in and participated in the conspiracy to violate the drug laws relating to the distribution or possession with intent to distribute heroin or cocaine.

On the other hand, in *United States v. Hillard,* 542 F.Supp. 487 (1982), Judge Lasker charged the jury as follows:

> In order to find James Hillard guilty [of engaging in a continuing criminal enterprise], you must be convinced beyond a reasonable doubt that the following five essential elements of the crime charged have been proven:
>
> First, that James Hillard committed one, some, or all of the events charged in Counts One, Five, and Six of this indictment. Those are the counts in which he's charged, except he's also charged in Count Three, but that does not relate to this subject. Count One charges conspiracy, the elements of which I have already discussed; Counts Five and Six, as you know, constitute the substantive charges against James Hillard and others.

(Tr. at 1872–73).
In addition, in *Sperling* I, Judge Pollack charged the jury as follows:

> Before you can find the defendant Herbert Sperling guilty of the crime charged in the 2nd count of the indictment you must be convinced beyond a reasonable doubt that the government has proved the following elements. First, that the defendant Herbert Sperling committed the offenses charged in Counts 8, 9, and 10 of the indictment [*i.e.,* the violations of 21 U.S.C. § 841]. Those counts as you will hear charge specific substantive offenses in July, November and December, 1971, by Herbert Sperling and Vincent Pacelli, and in the December offense by Juan Serrano.

(Tr. at 4139–40).
Both Judge Lasker and Judge Pollack did not believe it necessary to instruct the jury that it must first find a § 846 conspiracy as a predicate violation. This court believes that the charges given by Judge Goettel and Judge Werker were unnecessarily favorable for the reasons set forth in the text.

included offense. *Brown v. Ohio,* 432 U.S. 161, 166–67, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1973). To the extent, then, that Torres' argument that a § 848 conspiracy is a necessary predicate of a § 848 enterprise overlaps with his argument that a § 846 conspiracy is a lesser included offense of a § 848 enterprise, it is rejected for the reasons set forth in part I above.

 Moreover, to the extent that the necessary predicate argument differs from the lesser included offense argument, the court finds that the case law simply does not support the view that a § 846 conspiracy is a necessary predicate of the § 848 enterprise. In *United States v. Losada,* No. 78–106 (E.D.N.Y.), *aff'd* 674 F.2d 167 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982), defendants Rosalinda Losada and her husband Jesus Losada were charged with conspiring to import cocaine between August 20, 1974 and November 5, 1974 (the first conspiracy).[8] Following a plea bargaining agreement, the Government dismissed the indictment against Rosalinda in return for Jesus' guilty plea. Then in 1978, the Losadas were charged with conspiring to import and distribute cocaine between January 1972 and October 1976 (the second conspiracy). A three-month trial before Judge Mishler resulted in the Losadas' conviction on all counts including the conspiracy charge. On appeal, the convictions of the Losadas were vacated and new trials ordered. The Second Circuit also remanded for reconsideration of the Losadas' claims that prosecution on the second conspiracy was barred because of double jeopardy by the plea bargain agreement with respect to the first conspiracy count. On remand, Judge Dooling noted that the Second Circuit had not directed that the Losadas' claims be resolved at a pretrial hearing, and decided to defer decision until after retrial because of evidentiary reasons.[9] The retrial resulted in the Losadas' convictions on all charges including conspiracy and the substantive counts. In addition, Rosalinda was convict-

ed of engaging in a continuing criminal enterprise, a count added in a superseding indictment following the remand for retrial by the Second Circuit. Following the guilty verdicts at trial, Judge Dooling concluded that double jeopardy barred the conviction of the second conspiracy and granted Jesus Losada's motion to vacate his conviction on that count.

Judge Dooling's unfortunate death occurred before he could decide Rosalinda's motion to vacate her count one conspiracy conviction. Her case was reassigned to Judge Neaher who concluded that the plea bargaining agreement with the Losadas also barred Rosalinda's conviction on the second conspiracy. *United States v. Losada,* No. 78–106, slip op. at 9. Rosalinda Losada then claimed that since the conspiracy count was alleged along with charges in counts two, three, and four as "part of a continuing series of violations" underlying the continuing criminal enterprise, the vacatur of the conspiracy verdict rendered the § 848 conviction invalid.

 Judge Neaher rejected this argument. He concluded that the § 848 continuing criminal enterprise conviction could stand "even if a conviction on a conspiracy charge tried with and underlying a § 848 count must be vacated after trial," *id.* at 10. On appeal, the Second Circuit affirmed:

> Rosalinda contends that the dismissal of the conspiracy count undermined her conviction on the continuing criminal enterprise count. The latter count expressly incorporated the four other counts; so she argues that when one of those (the conspiracy count) was dismissed, *a necessary predicate for conviction under § 848 was removed....* The government in the instant case was not required to prove each of the four counts referred to in the § 848 count as part of the continuing criminal enterprise. Although the § 848 count of the indictment referred to four other counts of the indictment, as long as the jury found *three* requisite viola-

---

8. For the full factual background of this case, see *United States v. Cambindo,* 609 F.2d 603 (2d Cir.), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).

9. The Losadas' claim urging dismissal of the 1978 indictment because of the 1975 plea bargain agreement depended upon evidence to be introduced during the retrial.

tions—as it did in convicting on three substantive counts—the § 848 conviction will stand.

*United States v. Losada,* 674 F.2d 167, 174 (2d Cir.) (emphasis added) (footnote omitted), *cert. denied,* —— U.S. ——, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). As the Second Circuit has clearly stated, a § 846 conspiracy is not a necessary predicate of a § 848 continuing criminal enterprise.[10] Accordingly, this court's refusal to so instruct was proper.

### III.

### *The Due Process Claim*

Counsel for defendant Torres also raised a due process claim with respect to certain portions of the court's instructions, the text of which is set forth in the margin.[11] He stated:

> [W]e take exception to Your Honor charging that the violations which could be the predicate for count two do not have to be included in the indictment. We believe that is a due process violation. In a count which allows a defendant to be sentenced to a possible life sentence, that it is only due process that he be given notice of all of the possible violations that could be used in the predicate for that count... I think the jury should have to find that the defendant is guilty of those things that are charged in the indictment, otherwise he is denied due process. He hasn't been given notice of the possible violations.

**10.** Actually, one of the three other counts, Count Four, was also a conspiracy count. See *United States v. Losada,* No. 78–106, slip op. at 4 (E.D.N.Y. filed May 20, 1981). This oversight, however, does not seem crucial to the court's reasoning.

*United States v. Losada, supra,* does not conclusively establish, however, that a § 846 conspiracy is not a lesser included offense of a § 848 continuing criminal enterprise. This is because two separate criminal transactions appear to have occurred in *Losada.* In that case, the § 846 conspiracy arose from an earlier criminal transaction whereas the § 848 continuing criminal enterprise arose from a different, subsequent transaction.

Two offenses do not stand in the relationship of lesser and greater offenses where they arise from different criminal transactions. Instead, they are simply two separate offenses which can be the subject of two different prosecutions, convictions, and sentences. Since it appears that separate criminal transactions were involved, see *United States v. Losada,* No. 78–106, *supra,* this court hesitates to rely on *Losada* as a clear resolution of the lesser included offense issue.

**11.** The court instructed the jury as follows on the elements of a continuing criminal enterprise:

> The first element of the charge that you must find is that Jose Martinez-Torres committed one or more violations of the narcotics laws. These may be one or more of the violations charged in Counts 1, 3, and 4 of the indictment, but it is not necessary that the violations which you find were committed by him are the specific ones charged in the indictment.
>
> You may conclude from the evidence before you that he committed other violations of the federal drug laws.

This element is satisfied, for example, if you find that Martinez-Torres is guilty of the crime of conspiracy charged in Count 1, the elements of which I have already discussed, or the substantive crimes charged in Counts 3 or 4, as to which I shall instruct you shortly.

The second element that you must find in order to convict Jose Martinez-Torres under Count 2 is that his conduct in committing one or more of these violations charged in the indictment was part of a continuing series of violations by him of the federal drug laws. In this instance, a "series" means three or more such violations. You must therefore find that he committed at least three such violations of the federal narcotics laws before he can be convicted of Count 2.

Now, in determining whether Martinez-Torres' conduct was part of such a continuing series of violations, you may look to the violations charged in Counts 1, 3, and 4. That is, you may find that the violations charged against the defendant Martinez-Torres in Counts 1, 3, and 4 are a series of such violations or are part of a series of violations.

However, you may also look to alleged violations other than those substantive offenses specifically charged in Counts 3 and 4.

The government does, in fact, contend that the evidence discloses that Martinez-Torres committed other violations of the drug laws that are not specifically charged in the indictment. In other words, the government is not required to prove that Martinez-Torres is guilty of any particular narcotics count charged in this indictment in order for you to find that he committed a series of violations of the federal drug laws.

(Tr. at 3416–18).

(Trial Transcript at 3453–54, 3455). Essentially, defendant Torres is objecting to that portion of the court's charge instructing the jury that in determining whether the defendant committed the series of offenses of the federal drug laws underlying the § 848 count, it need not confine itself to those offenses specifically named in the indictment (in this case, the indictment, SSS 82 Cr. 489, alleged three specific violations of the drug laws; count one charges a § 846 conspiracy; counts three and four charge substantive narcotics violations). In this case, the court instructed the jury that it could consider other violations of the federal drug laws which, although not specifically named in the indictment, are supported by evidence adduced during the trial. Thus, conceivably under this court's instruction, the jury could have acquitted Torres on counts one, three, and four and yet convicted him of count two based upon its determination that the evidence at trial showed three or more other violations of the federal drug laws not specified in the indictment.

The court begins its analysis by noting that § 848 has been upheld against an attack that the statute is unconstitutionally vague. *United States v. Sisca,* 503 F.2d 1337, 1345 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Manfredi,* 488 F.2d 588, 602–03 (2d Cir.), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1973); *accord: United States v. Valenzuela,* 596 F.2d 1361, 1366–67 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979); *accord: United States v. Cravero,* 545 F.2d 406, 410–11 (5th Cir.), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977) (relying on *Manfredi* ); *accord: United States v. Collier,* 493 F.2d 327, 329 (6th Cir.), *cert. denied,* 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974) (relying solely on *Manfredi* ). In this specific context, Torres' claim is foreclosed by the Second Circuit's recent views in *Sperling v. United States,* 692 F.2d 223 (2d Cir.1982). As discussed in part I above, Sperling and others were indicted on numerous violations of the federal narcotics laws. Count one charged Sperling

with a § 846 conspiracy; count two charged him with a § 848 continuing criminal enterprise. Counts eight, nine, and ten charged Sperling with possession of heroin and cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (1976). A jury convicted Sperling on all counts with which he was charged. On appeal, Sperling argued, *inter alia,* that the government failed to comply with the Jencks Act, 18 U.S.C. § 3500 (1976), when it refused to provide him with a letter written by the principal government witness, Barry Lipsky. Appellant claimed that the letter could have been used to attack Lipsky's credibility. The Second Circuit agreed and reversed the convictions on the substantive counts, holding that aside from Lipsky's testimony, there was insufficient evidence to convict him of counts eight, nine, and ten. *United States v. Sperling,* 506 F.2d 1323, 1335 (2d Cir.) (*Sperling* I), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). The Second Circuit remanded for a new trial on those counts.

The Second Circuit affirmed the convictions on count one, the § 848 continuing criminal enterprise count, holding that aside from Lipsky's testimony, other independent evidence supported those convictions. With respect to the § 848 conviction, the court stated, "Sperling's conviction of engaging in a continuing criminal enterprise involving hard narcotics was based on evidence wholly independent of Lipsky's testimony," *id.* at 1335. The court remanded the case to the district court for reconsideration of the sentence imposed on the conspiracy count since the sentence on that count was concurrent with the substantive counts which were reversed. 506 F.2d at 1335 n. 14. On remand, Judge Pollack sentenced Sperling to concurrent sentences on the conspiracy and the continuing criminal enterprise convictions. On appeal, the Second Circuit vacated the sentence on the conspiracy count. *United States v. Sperling,* 560 F.2d 1050, 1060 (2d Cir.1977) (*Sperling* II). This court has already discussed this issue extensively in part I above.

On July 10, 1978, Sperling filed a petition pursuant to 28 U.S.C. § 2255 (1976), arguing that the absence of guilty verdicts on counts eight, nine, and ten rendered his § 848 conviction invalid. Judge Pollack denied this petition, emphasizing that the *Sperling* I court had found that the conviction of count two was supported by more than enough evidence. *United States v. Sperling*, No. 78–3099 (S.D.N.Y. filed Aug. 31, 1978). The Second Circuit affirmed by order. *Sperling v. United States*, 595 F.2d 1209 (2d Cir.) (*Sperling* III), cert. denied, 441 U.S. 947, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). On October 13, 1981, Sperling filed a second § 2255 petition, arguing that by affirming the conviction on the § 848 count after having vacated the convictions on the substantive counts, the Second Circuit had affirmed his conviction of a crime although there was no proof that he committed it. Judge Pollack denied this second petition. *United States v. Sperling*, 530 F.Supp. 672 (S.D.N.Y.1982). The Second Circuit affirmed. *Sperling v. United States*, 692 F.2d 223 (2d Cir.1982) (*Sperling* IV).

In *Sperling* IV, the Second Circuit held that the second § 2255 petition raised the same arguments as the first and that the present petition was controlled by the determination of the first § 2255 petition. *Sperling v. United States*, 692 F.2d at 225. Although the court did not believe it necessary to reach the merits, it nevertheless proceeded to more fully explain its holding in *Sperling* I:

> The instant controversy is triggered by the district court's instruction at the 1973 trial that, to convict appellant on the § 848 count, the jury [must] have been convinced beyond a reasonable doubt that he committed the offenses charged in the substantive counts. That charge was unnecessarily favorable to appellant. *The law requires merely that there be evidence that the defendant committed three substantive offenses—even if not charged in separate indictments—to provide the predicate for a § 848 conviction. See United States v. Sisca*, 503 F.2d 1337, 1345–46 (2d Cir.) (affirming a § 848 conviction although there were no indictments for substantive offenses), *cert. denied*, 419 U.S. 1008 (1974). *Absent the linking of § 848 to the three substantive counts, there clearly was sufficient evidence to support the § 848 conviction even without the substantive counts.*

*Id.* at 226 (emphasis added).[12] In *Sperling* IV, the Second Circuit clearly indicates that a § 848 conviction is valid even if the three predicate offenses are not specifically named in the indictment. Instead, as long as the jury finds beyond a reasonable doubt that the defendant committed three violations of the federal narcotics laws, a § 848 conviction, assuming the other elements are established, will stand. Thus, under *Sperling* IV, a defendant may theoretically be convicted of a § 848 count even if he is acquitted of three substantive narcotics counts named in the indictment if the evidence at trial discloses at least three other narcotics violations not specifically named in the indictment. This is exactly how this court instructed the jury in this case.[13]

12. It is unclear whether Judge Timbers interpreted *Sperling* I as having relied on evidence of other violations not named in the indictment or whether he believed that *Sperling* I relied on evidence of the named violations. Thus, for instance, after quoting the *Sperling* I language citing extensive evidence of other violations, Judge Timbers stated, "We held that this evidence was more than sufficient to sustain appellant's conviction under the continuing criminal enterprise count." *Sperling v. United States, supra*, 692 F.2d at 226 n. 1. Judge Timbers also stated that "since the trial judge linked the § 848 count to the substantive counts, however, we were precluded in *Sperling* I from looking beyond the three substantive counts to hold that the jury convicted on the basis of evidence other than the substantive count.... Rather, we affirmed the § 848 conviction *not* on evidence other than that in support of the substantive counts, but precisely on the evidence presented in support of those counts." *Id.* at 227.

13. Moreover, the court notes that Judge Pollack's jury instructions created special difficulties not present in this case. Judge Pollack specifically linked the § 848 count to the three named substantive offenses; he charged:

> Before you can find the defendant Herbert Sperling guilty of the crime charged in the second count of the indictment you must be

As an example of the type of independent evidence sufficient to support three unnamed violations of the narcotics laws, the *Sperling* IV court cited this passage from *Sperling* I:

> convinced beyond a reasonable doubt that the government has proved the following elements:
> First, that the defendant Herbert Sperling committed the offenses charged in counts 8, 9, and 10 of this indictment [*i.e.*, violations of 21 U.S.C. § 841]. Those counts, as you will hear, charge specific substantive offenses... (Tr. at 4139–40).

Despite Judge Pollack's instructions specifically connecting the § 848 count to the three substantive counts, Judge Timbers' majority opinion found that evidence independent of that introduced to support counts 8, 9, and 10 was introduced at trial which supported the § 848 conviction. It was this limitation imposed by Judge Pollack's instructions that was the central focus of Judge Kearse's lengthy dissent:

> Logically, therefore, in light of the explicit instructions to the jury not to convict on count 2 unless it was satisfied beyond a reasonable doubt of Sperling's guilt on counts 8, 9, and 10, it would seem that we would have set aside the conviction on count 2 as well. If the jury was not entitled to find Sperling guilty on count 8–10, it was not entitled, under the court's instructions, to find him guilty on count 2....
> Thus, when the jury has been instructed that it may conclude "A" only when it has found "B," we simply may not affirm on the supposition that the outcome would have been the same if the jury had been told that it could conclude "A" if it had found "C."
> In sum, I disagree with the majority's view of the merits of Sperling's claim. As I read *Sperling* I, Sperling's contention that his count 2 conviction was affirmed on the basis of facts other than those on which the jury had been instructed to render a verdict is factually correct. And his contention that such an affirmance denied him due process is legally sound.

*Sperling v. United States, supra,* 692 F.2d at 230, 233 (Kearse, J., dissenting). In the present case, however, the jury charge did not specifically limit the § 848 offense to those predicate offenses named in the indictment. *See* note 11, *supra.*

In addition, Judge Kearse also questioned the propriety, in the *Sperling* trial, of a general instruction referring to acts not mentioned in the indictment when the language of the indictment itself mentions only certain acts. The indictment in the *Sperling* cases specifically incorporated the substantive counts:

COUNT TWO
The Grand Jury further charges:

The record shows that Sperling was the operational kingpin of a highly organized, structured and on-going narcotics network. Testimony by Conforti, Cecile Mileto and Vance, as well as visual and

> From on or about the 1st day of May, 1971, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of New York, HERBERT SPERLING, the defendant, unlawfully, wilfully, intentionally and knowingly did engage in a continuing criminal enterprise *in that he* unlawfully, wilfully, intentionally and knowingly did violate Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A) *as alleged in Counts Eight, Nine and Ten of this indictment which are incorporated by reference herein,* which violations were a part of a continuing series of violations of said statutes undertaken by the defendant in concert with at least five other persons with respect to whom the defendant occupied a position of organizer, supervisor and manager and from which continuing series of violations the defendant obtained substantial income and resources.
> (Title 21, United States Code, Section 848).

*Sperling v. United States, supra,* 692 F.2d at 231–32 n. 5 (quoting Sperling indictment count two) (Emphasis added). Judge Kearse believed that with this indictment, a general instruction referring to acts not named in the indictment might have been "an informal but impermissible amendment of the indictment." *Id. quoting United States v. Knuckles,* 581 F.2d 305, 310 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

In this case, a general instruction referring to acts not mentioned in the indictment does not create any problem of impermissible amendments of the indictment because count two does not limit itself to the specific violations named in other parts of the indictment. Here the indictment stated:

COUNT TWO
The Grand Jury further charges:

> From on or about the 1st day of January, 1982, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of New York and elsewhere, JOSE MARTINEZ–TORRES, a/k/a "Cheo", a/k/a "Jose Rivera", the defendant, unlawfully, intentionally and knowingly, did engage in a continuing criminal enterprise in that he did violate Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A) and 846 as alleged in Counts One, Three and Four of this indictment, which are incorporated by reference herein, *and did commit other violations of said statutes.*

This provided the basis for a general instruction allowing the jury to consider other violations not named in the indictment.

electronic surveillance clearly established that during the period from May 1, 1971 through April 13, 1973 Conforti, Louis Mileto, Goldstein, Schworak, Spada and many others were engaged in Sperling's narcotics enterprise directly under his supervision. There was evidence that on more than 26 occasions some or all of these individuals mixed heroin for Sperling. Each of these mixing sessions involved possession, diluting and distributing from a half kilo to three kilos of pure heroin.

*Sperling v. United States,* 692 F.2d at 226 n. 1 *quoting United States v. Sperling,* 506 F.2d 1323, 1344 (2d Cir.), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1974). In *United States v. Sisca,* 503 F.2d 1337 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974), the Second Circuit affirmed a § 848 conviction in a case where a three count indictment charged no substantive narcotics violations. In *Sisca,* count one charged a § 846 conspiracy; count two charged defendants with using communications facilities in furtherance of the conspiracy in violation of 21 U.S.C. § 843(b) (1970); count three charged a § 848 enterprise. The Second Circuit held that the evidence supported a § 848 conviction. After summarizing the facts in a fashion similar to the quoted passage from *Sperling* I above, the court added, "The proof that Abraham was engaged in bi-weekly narcotics transactions for one and a half years clearly was sufficient to satisfy the 'continuing series of violations' requirement of that section." *United States v. Sisca,* 503 F.2d at 1346 n. 11.

In this case, the evidence disclosed that Torres was the ringleader of a million dollar narcotics mill conducted in a Bronx apartment which involved at least ten other people in New York City and others in Massachusetts; that he supervised the frequent cutting and packaging of large quantities of drugs for street sale; that he bought and sold heroin frequently; that he arranged the distribution of the drugs; and that he supervised the record keeping, stockpiling, and other mill operations. In short, the evidence disclosed that Torres headed a large scale drug business and that he engaged in narcotics transactions on a frequent basis over a six month period.

This court concludes that apart from the three narcotics violations specifically named in the indictment, there was evidence of numerous violations of the federal drug laws. This evidence of three or more violations not named in the indictment is sufficient to establish the predicate offenses for a § 848 conviction. *See United States v. Sperling,* 506 F.2d at 1344; *United States v. Sisca,* 503 F.2d at 1346; *cf. United States v. Bermudez,* 526 F.2d 89, 94 (2d Cir.1975) (indictment for § 846 conspiracy need only track language of statute and need not allege a single act in furtherance of the conspiracy), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976).

## IV.

### Conclusions

This court rejected defendant Torres' request for a lesser included offense instruction based on its interpretation of *Sperling* II. In *Sperling* II, the Second Circuit clearly established the principle that cumulative punishment may not be imposed for violations of §§ 846 and 848 arising from a single transaction. In part I, this court explored the underlying rationale of that principle. First, this court examined the view that cumulative punishment is forbidden because a § 846 conspiracy is a lesser included offense of a § 848 continuing criminal enterprise under the *Blockburger* test. Second, this court construed *Sperling* II as based upon an analysis of congressional intent. Under the recent Supreme Court modifications of the *Blockburger* test, *Sperling* II's examination of legislative history is analytically prior to its application of the *Blockburger* test. Thus under current doctrine, the court would not have reached the *Blockburger* issue in *Sperling* II. Given the confusion that would otherwise result and given that *Sperling* II's reasoning is somewhat unclear, this court believes that *Sperling* II's results should be interpreted as based upon its legislative analysis.

It is also important to note that the Supreme Court did not squarely decide the lesser included offense issue in *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). While the Second Circuit is unclear on this issue, the court believes that the logical implication of *Sperling* II and its progeny is that a § 846 conspiracy is *not* a lesser included offense of § 848 since the Second Circuit permits multiple convictions. Under traditional double jeopardy principles, a lesser included offense cannot support a separate conviction. It follows, therefore, that if two offenses arising from a single transaction may be the subject of two separate convictions, they cannot stand in the relationship of greater and lesser included offenses. While the court believes this to follow from the logic of *Sperling* II, the court believes that the Second Circuit's view on this issue remains unclear. Since the issue of whether § 848 and § 846 stand in the relationship of greater and lesser included offenses is unsettled, this court believes that its refusal to instruct on the lesser included offense was not plain error, at least until further clarification from the Second Circuit.

With respect to the argument that a § 846 conspiracy is a necessary predicate of a § 848 continuing criminal enterprise, this court rejected that argument for two reasons. First, this argument overlaps with the lesser included offense argument. To this extent, this second argument is rejected for the same reasons set forth in part I above. Second, to the extent that the two arguments differ, the view that a § 846 conspiracy is a necessary predicate of a § 848 enterprise is squarely refuted by *United States v. Losada,* 674 F.2d 167 (2d Cir.1974).

This court also rejected Torres' due process arguments. The court relied on recent Second Circuit cases for the view that the three predicate offenses of a § 848 violation must be supported by evidence adduced at trial but need not be specifically named in the indictment. *See Sperling v. United States,* 692 F.2d 223 (2d Cir.1982); *United States v. Sisca,* 503 F.2d 1337 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42

L.Ed.2d 283 (1974); *United States v. Sperling,* 506 F.2d 1323 (2d Cir.), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

For the foregoing reasons, this court concludes that its refusal to amend its jury instructions was proper.